Okay. So, Mr. Kolashnikov, I apologize if I said that wrong. Kolashnikov, is that right? That's right. Very well. Mr. Kolashnikov, would you like to proceed, please? Thank you, Your Honor. And may it please the Court, Yuri Kolashnikov from Botini-Botini, on behalf of Plaintiff Appellant. With the Court's permission, I would like to reserve three minutes for rebuttal. Keep an eye on the clock. We'll try to help you. Will do. This appeal presents a discrete issue of whether a forum selection clause which designates the Delaware Court of Chancery as a forum is valid and enforceable, as applied to plaintiff's Section 48 claim under the Exchange Act, over which federal courts have exclusive jurisdiction. Or, stated differently, whether defendants can enforce the forum by law to completely deprive the plaintiff of any forum in which to prosecute her derivative Section 48 claim. Now, just earlier this year, the Seventh Circuit examined a nondetectable forum by law… So, in terms of both parties, nobody had any notice of that. But before you get to that, if you look at our case law… Well, let's start with the Supreme Court. The Supreme Court told us in the Atlantic Marine case what we have to look for. We find it in Bremen. And then we picked it up from there and basically held that these kinds of forum selection clauses are valid unless there is a strong public policy argument against them. And I know that's your argument. So, before you get to the Seventh Circuit, what is your best argument that, based on the case law that existed prior to the Seafarer's case in the Seventh Circuit, that you have shown that there is a valid public policy argument for defeating GAP's use of the forum selection clause in this case? Thank you, Honor. And we are not relying exclusively on the Seventh Circuit's decision. We think it's consistent with what we argued in our opening brief, which is, under Bremen, as your Honor indicated, a forum clause is unenforceable if it violates the public policy of the forum declared in a statute or judicial decision. But what – and the forum here is, of course, in California. And what law would you cite that suggests that this violates the law of this forum? Well, your Honor, the forum here is the federal court because it's a federal claim. And so the court has a federal question jurisdiction. Right. With respect to the 49 claim, it's a federal question, not a diversity case, your Honor. Right. But, again, the bottom line is our cases, say, except for the Idaho case, which – where you had an express statute that said that it was void as against public policy. And every other instance we have held in the Richards v. Lloyd case, in the advanced China case, that these types of bylaw requirements are valid. What, if you will, what authority do you have based on prior to the Seventh Circuit do you have that suggests that this is not enforceable? Again, your Honor, I would submit that the relevant forum here is a federal forum, federal court. And the federal securities laws declare in two statutes, Section 27A and 29A of the Exchange Act, the public policy of the federal courts. Again, Section 27A provides for exclusive jurisdiction of federal courts over Exchange Act claims. And Section 29A provides that no compliance with any provision of the Exchange Act can be waived, and any such waiver shall be void. Again, we have two specific statutes. Wait a minute. You said shall be void? Correct.  Okay, but again, in our Richards case, in our advanced China case, we held that something just like this was enforceable, notwithstanding the language that you're talking about. Right? No. Well, I would disagree with that, Your Honor. First, turning to Richards, that decision arose out of a class of cases filed around the country in the late 90s related to violent litigation. Okay. As this court started out the opinion, the first sentence is the primary question presented is whether the anti-waiver provisions of the Securities Act and the Exchange Act void choice of law and choice of forum clauses in an international transaction. Okay, that's Richards, but what about advanced China? That involved the law of the state of Washington. That's not international. Yes, Your Honor. Advanced China did not involve the Exchange Act waiver provision. So it involved the state anti-waiver provision. And in that case, the court specifically noted that the plaintiffs were not waiving any substantive rights because defendants before this court conceded that they can bring Washington's securities claims in California. So this is the lay of the land from the Supreme Court as well. Like if you look to the Mitsubishi case, and you look to the McMahon case, which the defense have cited, and the court in that case held, well, you can go to arbitration, even despite the anti-waiver provision. But what happened in those cases, the plaintiff could still enforce the substantive claims in the alternative forum, whether in the arbitration, which was the case in Mitsubishi and the McMahon, or in the same case, where the plaintiff could still enforce the substantive claims. Here we have an actual waiver of plaintiff's 14a derivative claim because it is undisputed. And the trial court and defendants agree that application of the GUPS bylaw to the claim will completely extinguish it. Let me stop you for a second. It doesn't extinguish all claims. It extinguishes the 14a claim, but the underlying claim upon which the 14a claim has to be founded, the Delaware Court of Chancery has authority over, doesn't it? Your complaint has five causes of action, including a derivative cause of action, and that can proceed in front of the Delaware Court, can't it? Correct. So the breach of fiduciary duty claims, the fatal claims, can proceed before the Delaware Court of Chancery. The section 14a claim cannot. So what exactly is the 14a claim that's distinct from the claims that can proceed? The 14a claim allows shareholders to sue derivatively for material misstatements or omissions in a proxy statement. Well, as I dig into that, I'm having a hard time figuring out how that's really different. I guess it's different in the sense as you focus on the statement, but I don't understand what's wrong with the statement unless there's something defective with the underlying lack of diversity under Delaware law, and that's the claim that you could proceed with. So what's different about this claim? Well, it's a separate claim the plaintiff has a right to pursue. What's different about it? Sure, it's a separate claim, but what's different about it? Why can't the derivative claim proceed in the Delaware Court saying, gee, under whatever law you're going to point to, the GAAP is required to have a more diverse board than it has? That's a cause of action. You can proceed on that. What's different about the claim that you can't proceed on? Again, I apologize if I'm not answering your question, but the plaintiff has a right in an act duly passed by Congress to prosecute a claim under 14A. The fact is there is an alternative. What is different? If you have no answer, if there's nothing different, please tell me that. But what I've asked you is not is there a different label, is there a 14A claim. I'm not disputing there's a 14A claim you may not be able to proceed with in Delaware. But I've asked you three times now, what's different about that claim? And so far, I'm still waiting for an answer. I mean, I will point to the control decision, Your Honor, from the Eighth Circuit, which acknowledged that the 14A claim is different than the claims available for non-disclosure. Fine. Somebody else says it's different. You still haven't told me what's different about it. And this is the last time. If you don't tell me something now, I'm going to give up on it. It's scientific, too. Proxy law claims can be found liable for negligence standard, while there's a heightened scientific standard under non-disclosure claims under Delaware law. And that was cited in a brief on the control decision from the Eighth Circuit. Let me follow up on what my colleagues asked about. Now, to get to the Seafarer's case, as you know, Judge Easterbrook in his dissent pointed out that, you know, you can proceed before the Delaware Court of Chancery. That's the expert court in the whole country for the law of the, if you will, most big corporations. They're the most experienced and so on. And you can proceed there, and if you're successful, you can take that and run with it, no problem at all. And if you weren't concerned about that, why didn't you plead demand futility as required by Federal Rule 23.1? You didn't try to proceed in derivative action that you would need to do if you were before the Delaware Court. So I wonder how you can have it both ways. Either you can go to Delaware, where I don't agree with my colleague. I don't see where you're really harmed, or you can plead it properly before a district court, but you have to plead as required under 23.1. What am I missing? Well, Your Honor, the district court never held that we did not adequately plead demand futility. We did allege that demand was futile in this case, and so— You're saying what? From my reading of the complaint, you didn't comply with what you would have to do under Delaware law to prove a derivative action. Am I missing something? Well, again, we would respectfully disagree, Your Honor. We believe the complaint is adequately pleaded, but if it was not, we would be entitled to leave to amend. The question before this Court right now is not whether or not we can proceed on the breach of fiduciary duty claims, which we are not appealing from the disposal of those claims. The issue here is very discreet about the 14A claim, and we do have two statutes that are passed by Congress, which reflects the public policy of Congress that, one, the Court has exclusive jurisdiction of the 14A claim, and, two, that any provision—composite provision—cannot be waived, and we do have a waiver with the 14A claim, and— But we have two cases. It says you can't. Well, again, Richard is dealing with a completely—a truly international agreement, to use the Court's language, and the international context permeated the decision. Sun did not involve the exchange on claim. So if you look at Sun and you look at the relevant Supreme Court decisions, all of them are very careful. And Mitsubishi, in footnote 19, does state that if a choice of law, a choice of forum provisions were to operate in such a way as to prospectively waive substantive compliance, the Court will have no hesitation to strike them down. So this is the issue that we have. This is the issue that's left open. We would submit by McMahon and Mitsubishi. Mitsubishi, do you want to— Do you want to save any time for—by allowing me to interrupt you? I apologize. You've got about three minutes. Do you want to save time, or do you want to go ahead? Yes, that's fine, Your Honor. I will reserve the remainder of the rebuttal. Very well. Thank you. All right, let's hear from Mr. Martinez, please. Thank you, Your Honors, and may it please the Court. Your Honors, this case is a cynical effort to cash in on the racial tensions that have swept through our country in recent years. Plaintiffs' counsel have brought carbon copies of this case against five other leading American companies. Each one of those cases has been roundly rejected. This case should fail as well, and I'd like to just emphasize three points. First, the anti-waiver provision just doesn't apply here. The Forum Selection Clause doesn't eliminate GAAP's duty to comply with the Exchange Act, and it doesn't eliminate plaintiffs' right to enforce that compliance through direct litigation. Second, we win under Richards and Son, even if you think that the anti-waiver provision does apply here. Together, those cases establish that a Forum Selection Clause trumps the anti-waiver provision, even when the clause points to a state court. Counsel, let's say, just arguendo, let's just say that we read the Seventh Circuit CFAIR case. I'm not saying we do, but arguendo, let's say we agree with the majority. What does that do to this case? They didn't plead Delaware Code Section 115. Would it matter? Does it matter whether it goes to Delaware or it stays with the district court from your perspective? So just with respect to CFAIRs, Your Honor, if you agreed as a de novo matter with the analysis there, I don't think it would make a difference to this case for a couple different reasons. First of all, the holding there was based on, as you indicated, a Delaware law argument about the precise language of Section 115, which was added in 2015 to the Delaware Code. That section is just not presented in this case. It wasn't argued by the other side at any stage in this case. It was mentioned briefly in two places in their reply brief, but it was not even in the reply brief. They purported to make a Delaware law argument for the first time, and that statute wasn't even mentioned there. So from your perspective, 115 is waived? Absolutely, Your Honor. This case was never brought on a theory that the forum selection clause is somehow invalid under Delaware law because of 115. And I would just say, just as a practical matter, I mean, this question of what 115 means, how it intersects with Section 109, how it's been interpreted by the Delaware courts, I mean, it's a tricky question that's divided some of the leading judges in the country, as you saw from the divided Seventh Circuit opinion. We would just respectfully suggest that it would be not appropriate for this court to kind of wade in and resolve this tricky question of Delaware law in a situation where it hasn't been argued, hasn't been briefed, even in this court. Not only has it been waived, but it hasn't even been briefed in any real sense in this court. I think beyond that, on the Delaware state law question, you know, we would just say, and I'm happy to talk about this at greater length, we just respectfully would disagree with the majority, happy to get into our view of 115 and 109, but again, it's hard to do that on the fly without briefing. Just for a moment, I know your position on Seafarers, but I'm sure you read Judge Easterbrook's dissent. Do you agree with what he said? Do you disagree with what he said in part? I think we agree with some of what he said, and we're maybe not as sure about other parts of what he said because we frankly haven't had occasion to look into them because they weren't presented in this case. I do think one important thing to keep in mind about Seafarers generally and Judge Easterbrook's dissent, though, is that it's operating in a very different precedential context than how this case comes to this court because in the Seventh Circuit, the Seventh Circuit did not have the Sun decision or the advanced China decision, and so the Seventh Circuit was analyzing what the anti-waiver provision meant and how the forum selection clauses need to be balanced against anti-waiver provisions in a circumstance in which there was no binding precedent. Here, though, there is binding precedent. It's the Sun case, the advanced China case, and the advanced China case could not be clearer that the holding in Richards, which says that a forum selection clause trumps the anti-waiver provision, Sun says that that holding carries over and applies even when the forum selection clause points to a state forum. So my friend on the other side says, no, no, no, Sun is totally different because, you know, Richards is totally different because it turns on the international context. Sun expressly rejected that argument. And I would just point the court to, I think it's on page— Does Sun carve out an exception for against public policy? And is the distinction you make that if this forum selection clause extinguished all claims under the Securities and Exchange Act, that might be a public policy issue, but because there's ways to winnow around it, like Judge Clifton said, with breach of fiduciary duty and a direct claim, that no public policy is implicated? No, Your Honor, I would respectfully disagree with that. I think what Sun says is that if all avenues for relief are extinguished, then we may have a problem, but not all avenues for relief under the Exchange Act. I think what Sun is recognizing is that if you have some avenues for relief, even if it's under state law, then that's okay. And that's, of course, exactly consistent with Richards, where Richards extinguishes completely the Exchange Act claim and says that the party could proceed in U.K. court under U.K. law, even though the Exchange Act claim was completely extinguished. And as Sun says, you know, the defendant was immunized from an Exchange Act claim. And I think the place where I would just point you to in the opinion, just sort of really pin down what the court meant, footnote three of the Sun decision says that, you know, that there might be a problem if plaintiffs would be denied any relief in a California court. And I think on page 1092 of the opinion, their opinion reiterates that courts have to enforce forum selection clauses, quote, unless the contractually selected forum affords the plaintiffs no remedies whatsoever. And here, for the reasons Judge Clifton was pointing out, there are remedies available. Those remedies are under Delaware law. As best we can tell, they seem to be fairly similar and at least, you know, as pled or as asserted, would kind of cover the alleged wrongs that the other side is alleging with respect to their Exchange Act claims. Judge Clifton, just to answer your question, we would sort of point you to these cases that are cited at page 38 of our brief, where we cite Delaware authority. I think it's the Stroud case and the Arnold case, which makes clear that there are causes of action under Delaware law for failing to fully and fairly disclose relevant information when you're seeking shareholder action and failing to have, you know, correct statements in your proxy materials. And so it seems to us that that's, you know, we have a hard time deciphering parts of the complaint, but it seems like the gist of their complaint on the Exchange Act claim is very similar to the kinds of claims that are available under Delaware law under Stroud and Arnold. I do want to go back to just to really emphasize the point with respect to Richards, Your Honor, because my friend on the other side tried to distinguish Richards by saying that that case only had to do with the international context. If you look at the oral argument in the Sun case, and it's available on Westlaw, this exact argument was made in Sun. And so the court asked the question to the plaintiff's lawyers, said, well, what about Richards? Isn't that a problem for your side? And the plaintiff's lawyers, just like my friend on the other side in this case, said, no, no, no, it's not a problem because Richards is all about the international context. But then when you pick up the Sun decision, that proposition is expressly rejected. And, again, I think the language I'd point you to is on page 1089, and here's what it says. Although Richards involved a forum selection clause that pointed to a foreign forum, its conclusion is equally applicable when the clause points to a state forum. So I think Sun clarifies what Richards means, and it clarifies that it applies not just when you're looking at the U.K., but also when you're looking at another domestic forum, a state law forum. And so I think that is sort of conclusive with respect to the question of what Richards means. So bottom line, if I'm hearing you correctly, the CFER appellate panel did not have the benefit of the Ninth Circuit's Richards or Advanced China cases, which decide the issues. They distinguished their own case law based on the international aspect. But in our circuit, the issue is clear. As long as there is a right on the part of the plaintiffs to plead a cause of action in a forum, and in this case in Delaware, that satisfies the Supreme Court's requirements. Is that correct? That is exactly right, Your Honors. That's exactly right. So on CFERs, you know, I think there's a state law issue and a federal law issue. With respect to the federal law issue, I think you stated it exactly correctly, that this case, this court would be bound by Richards and Sun. On the state law issue, we just think the 115 argument has never been raised. It's totally waived. It's very complicated. You shouldn't address it in the first instance. And if you want us to address it, we can tell you why we think it's – we disagree with the Seventh Circuit's analysis there, but we just don't think you should get to that. And so I think those are the grounds in which CFER really isn't a problem. And I've already explained, I think, why Richards applies its holding to the state law context. With respect to Sun, you know, the distinction that the other side raised, as we've already discussed a little bit, was about this concession and the fact that whether other remedies are available. But Sun very clearly says that, you know, there's no problem so long as some other remedies are available. The only other thing I'd say about Sun and the comments that my friend on the other side made is that my friend said something along the lines of that the holding in Sun was somehow contingent on the concession that was made at oral argument about the ability to bring the Washington claims. We just don't think that's right at all. The discussion of that concession appears in a separate section of the opinion, but I think the concession was sort of icing on the cake. I think the key fact for the reasons we've already talked about was that some relief was available, even though it wasn't necessarily going to be under Washington law. So I think for all those reasons, Your Honor, we think that the argument about whether the anti-waiver provision trumps the forum selection clause, we just think that you're bound by circuit precedent. I'll just make two other comments, but happy to answer questions on anything. We think there is another way to get to the same place on the forum selection clause that logically is sort of precedent to all this, you know, precedes this whole discussion about Richards and Sun, which is we do think that the anti-waiver provision isn't implicated here. You don't need to resolve the case on that basis, but I do want to just point it out. Right now, the anti-waiver provision forbids waivers of compliance, and I don't think there's any dispute that the gap is still subject to the Exchange Act. Everyone agrees that we still have a legal duty to comply with the Exchange Act provision, so there's no waiver of compliance there, nor is there a waiver of anyone's ability to enforce compliance. Without this forum selection clause, compliance could be enforced by the plaintiff, it could be enforced by the company, and it could be enforced by the SEC, and all three same entities could still enforce the Exchange Act even with the forum selection clause. Plaintiffs could bring a direct claim. How would the plaintiff be able to enforce? They could bring a direct claim. They wouldn't need to bring a Derivative Act claim. I hear that, but I'm not sure what cause of action you'd have that would support a direct claim as distinguished from a derivative claim. It's hard to visualize a plaintiff who has a specific personal injury from this purported violation. Your Honor, I would refer you to your court's decision in the Jobs case, which is cited in our brief, which makes very clear that a plaintiff would have a direct injury in this kind of circumstance where there's an alleged misstatement in a proxy statement, and the injury would be the deprivation of the shareholder's right to an informed vote. Essentially, if the company is misleading the shareholders about the information in the proxy statement, the purpose of which is to guide their voting decisions, you have suffered injury that is cognizable under the Exchange Act in a direct claim if you're deprived of that right, and the Jobs case, I think, makes that very clear. I get the theory of that. The problem is I have difficulty seeing somebody proceeding and succeeding in an individual damages claim based on that identified injury, but that may be another problem. To be clear, Your Honor, and I don't want to belabor this point because, again, we have the other grounds, but I don't think that they are seeking damages. I think if you look at their complaint, and if you look at paragraph 228 of their complaint on page 132 of the excerpt of the record, they expressly say that plaintiff does not seek any monetary damages for the proxy law violations. What could an individual on a direct claim seek? I think if they had damages, they could conceivably seek them. I don't think they're alleging damages here. No, no, I understand. You're telling us, and I may be well off on a tangent here because I, anyway, I just have difficulty. You've given us three ways that you think that enforcement actions under 14A could proceed. I just have difficulty, at least on the first route that you've suggested. I guess the only other thing I'd say, and, again, I don't want to belabor the point either, that the plaintiff, even if they didn't have damages and they've sworn damages here, they could seek equitable relief, which is perfectly available, and there's all sorts of types of equitable relief that shareholders do seek in these types of cases, and they do get. Often plaintiffs will get even injunctive relief that would prevent the vote from going forward until there's a corrective disclosure. And I gather, back to your earlier point, that if they go to the Delaware Chancery Court and make their claim there, if it is a valid cause of action, they can get relief there, right? Absolutely. If they have a valid cause of action in Delaware, they could get relief there. I do want to say, you know, we've talked a lot about the form selection clause. I just want to emphasize that although we've talked about these sort of more technical aspects of the case, I don't want to give the impression that there's any merit to the underlying substantive allegations here at all. The reality is that GAAP is a nationally recognized leader in promoting diversity and fighting discrimination in the workplace. In 2021, the company was literally ranked number one out of 11,000 publicly traded companies worldwide on the Refinitiv Diversity and Inclusion Index. With respect, counsel, let's say that's all true. That really doesn't bear on our case right now, does it? I don't think it bears. I understand the equities of it. I understand that that's your response to them. But our decision needs to be based upon law, and we've now discussed that, right? The form selection clause, I don't think it's relevant at all, and we can win without it. And, Your Honor, we would ask you to affirm the decision based on the form selection clause and based on the arguments we've made here. Very well. Thank you. Any other questions by my colleagues? Very well. All right. Mr. Koloniskoff, I apologize. Thank you, Your Honor. If I may just briefly discuss the CFRS decision. Even so, it's an out-of-socket decision. We do think that it reaches the correct result, and it is true that CFRS looked to Section 115. What case does not reach the right result? We believe CFRS does reach the correct result. Okay. But how can it reach the – that court wasn't bound by the precedent of this court in the way that this panel is. And it seems to me from the get-go that poses a problem because even if I found CFRS persuasive, and there are parts of it that do seem to be persuasive, we've got our cases that seem to prevent us from taking the same road that they've taken. Why do you think we can't? Your Honor, I would disagree that this court's precedent precludes this court from upholding the decision. You have to bear in mind that this is only the second decision in all countries that we are aware of that took this road. Every other decision, even cited by my colleague on the other side, have several Section 48 claims and apply the Fourth Section Clause, only two state claims. Some did not have an Exchange Act waiver implicated. So it cannot be – Again, Counselor, with respect, our case law addresses that. We can't really cross that. But what is your answer to the point made by both us and your opponent that you can get whatever relief you're entitled to on a diversity action before the Delaware Chancery Court? What's the matter with that? Why can't you get the relief you want there? Again, Your Honor, I apologize if I'm repeating myself. The plaintiffs have the right and the – I understand that. I'm asking you specifically, what relief can't you get? Assuming you're cut off here – I'm not saying you will, but assuming you're cut off and you go to Delaware, what can't you get there that you could get here? Again, Your Honor, I don't know if I have a better answer to tell you that Congress – the Supreme Court recognized in Borak that shareholders do have a derivative claim. So that's your answer that Congress intended otherwise? That basically is your answer? Yes, Your Honor. And there's two statutes that we believe expressly express the public policy of the federal courts and Congress to promote uniformity of decisions that do require the courts in this situation to start with a 49 claim and keep them in federal court. Just briefly on CFRS, I think one point that I tried to make was – finish up, if you will, please. Even though it applied, look to Section 115. It had to reach the decision whether or not the formal law was consistent with judicial requirement. And it specifically held that it was inconsistent with Judicial Requirements Change Act, which we believe is the correct result. In this case, the court can reverse by applying just federal law. Thank you, Your Honor. Okay. Any questions by my colleagues? All right. Thanks to both counsel for your argument. We appreciate it very much. The case of Lee v. Fisher is submitted.
judges: CLIFTON, SMITH, Reiss